UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAROL ANN RUCH,

           Plaintiff,

    v.

COSTCO WHOLESALE CORPORATION,

           Defendant.

Case No. 24-cv-05410-TSH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 34

## I. INTRODUCTION

Plaintiff Carol Ann Ruch filed a complaint against Defendant Costco Wholesale Corporation ("Costco") for claims arising out of Ruch's employment with Costco. ECF No. 25. Pending before the Court is Costco's Motion for Summary Judgment. ECF No. 34 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the January 15, 2026, hearing. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.[1]

## II. BACKGROUND

### A. Factual Background

Costco, a Washington corporation with a principal place of business in Washington, is a retail business. First Amend. Compl. ¶ 2 ("FAC") (ECF No. 25); Not. of Removal ¶ 17 (ECF No. 1). Ruch, a California resident, was employed with Costco at all relevant times to this action. FAC ¶¶ 1, 5; Not. of Removal ¶ 11. In September 2009, Ruch began working for Costco—she remains currently employed by Costco today while on medical leave. FAC ¶¶ 5, 38; Mot. at 10.

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 12, 14.

United States District Court
Northern District of California

United States District Court
Northern District of California

Overall, Ruch alleges that Costco (1) discriminated against her based on her disability and age; (2) retaliated against her for a FEHA complaint and requesting disability accommodations; and (3) violated her rights relating to disability accommodations. FAC ¶¶ 7–13, 17–25, 41–84.

### 1.    Costco's Employment Policies

Costco's Employee Agreement sets forth the company's anti-discrimination, anti-retaliation, and disability accommodation policies and procedures. Mot. at 2:10–26; Ruch's Separate Statement of Facts ("Pl.'s SSF") ¶¶ 1, 11 (ECF No. 35-5). Under Costco's disability accommodation policies, once an employee notifies Costco of a disability or medical condition, Costco works with the employee to provide reasonable accommodations for the employee's position. Mot. at 2:22–3:2; Pl.'s SSF ¶ 12. Costco's polices outline the following process for determining and implementing reasonable accommodations for an employee. Costco's Integrated Leave ("IL") Department assists in evaluating employee requests that require clarification. Mot. at 3:3–8; Pl.'s SSF ¶ 13. Costco may utilize the services of third-party companies—WorkCare, Briotix, and RehabWest—to evaluate an employee's request for reasonable accommodations. Mot. at 3:9–19; Pl.'s SSF ¶ 14. Briotix works with the employee's medical provider to clarify the scope of the workplace restrictions. Mot. at 3:9–19; Pl.'s SSF ¶ 15. RehabWest coordinates Job Assessment Meetings ("JAM") with an employee when the employee has permanent restrictions. Mot. at 3:9–19; Pl.'s SSF ¶¶ 16–17.

Costco has discretion to offer an employee Temporary Transitional Duty ("TTD") when an employee cannot perform the essential functions of their position. Mot. at 3:20–28; Pl.'s SSF ¶ 18. TTD—which may be offered for up to twelve weeks—may include temporarily eliminating essential functions or offering the employee a temporary alternative position. Mot. at 3:20–28; Pl.'s SSF ¶ 19. While on TTD, an employee continues at the same rate of pay as their permanent position. Mot. at 3:26–27; Pl.'s SSF ¶ 19. If Costco cannot offer an employee TTD, it may offer the employee personal leave for up to one year. Mot. at 3:20–28; Pl.'s SSF ¶ 20. Costco may also offer an employee permanent reassignment or a leave of absence pursuant to its Personal Leave Policy as alternative accommodations. Mot. at 8:28–9:7; 20, Pl.'s SSF ¶¶ 64–65.

United States District Court
Northern District of California

### 2.    The Parties' Employment Relationship

Costco hired Ruch on September 22, 2009, for work at the Redwood City, California warehouse and provided her with a copy of its Employee Agreement.  Mot. at 2:14–21, 4:1–3; Pl.'s SSF ¶¶ 2–3.  Ruch has consistently been employed by Costco as a Front End Cashier since 2016.  Mot. at 4:3–4; Pl.'s SSF ¶ 4.  During her employment, Costco has placed Ruch on medical leave multiple times:  in August 2023, in September 2023, and in October 2024.  Mot. at 6:16–28, 8:1–6, 10:1–7; Pl.'s SSF ¶¶ 44, 52, 73.  In December 2024, Costco placed Ruch on a workers' compensation-related leave of absence; Ruch remains on this leave today.  Mot. at 10:7–11; Pl.'s SSF ¶ 76.  Ruch is a current Costco employee who is eligible to return to work when she is cleared by her medical provider.  Mot. at 10:9–11; Pl.'s SSF ¶ 78.

#### a.    Activities Between 2022–2023

Ruch was diagnosed with Graves' Disease in 2022.  Opp. at 1:23–24 (citing Declaration of Michael Rachmann ("Rachmann Decl.") (ECF No. 35-1), Ex. 1 (Deposition of Carol Ann Ruch) at 20, 225 ("Ruch Dep. Tr.") (ECF No. 35-2)).  Ruch testified that the disease causes her to experience shortness of breath, leg cramps, incontinence, problems with temperature, energy, and motivation, and depression.  *Id.* at 1:24–26 (citing Ruch Dep. Tr. at 225).

On January 12, 2023, Ruch submitted a request to Costco for a reasonable accommodation for her medical condition to use an individual personal fan at her register.  Mot. at 4:21–22; Pl.'s SSF ¶ 21.  To support her request, Ruch submitted a letter from her physician, Dr. Jefferson Wen, stating, "Please accommodate Ms. Ruch's request for an individual fan due to her medical condition."  Opp. at 2:2–5 (citing Ruch Dep. Tr. at 64); *see* Declaration of Roberta Gurney ("Gurney Decl.") ¶ 24 (ECF No. 34-1).  After trying different fans, on March 14, 2023, Costco provided Ruch with a clip-on fan that met her request for a fan.  Mot. at 4:21–28; Pl.'s SSF ¶¶ 23–26.

On July 15, 2023, Ruch submitted to Costco a work restriction form completed by Dr. Wen that stated Ruch required a personal fan and a cool environment, should not be exposed to temperature over 72 degrees, and needed to be on "lower register[s] due to mental health issues."  Mot. at 5:13–25; Pl.'s SSF ¶¶ 31–32, 34; *see* Gurney Decl. ¶ 30, Ex. H (Work Restriction Form)

(ECF No. 34-15). Costco states that it was not familiar with the term "lower registers." Mot. at 5:22–25. Costco sought guidance from its IL Department to clarify the "lower registers" restriction. Mot. at 5:22–25; Pl.'s SSF ¶ 35. Ruch clarified with Costco that her restriction for "lower registers" meant that she could only work on certain registers. Mot. at 5:26–27; Pl.'s SSF ¶ 36. Ruch testified that she could only work on the lower registers due to her "anxiety and stress" and being "hit with boxes and carts" at the higher registers. Ruch Dep. Tr. at 104. Costco then offered Ruch TTD through July 30, 2023. Mot. at 5:27–28; Pl.'s SSF ¶ 36. On July 29, 2023, Ruch informed Costco that she could only work on registers 4 and 5. Mot. at 6:7–8; Pl.'s SSF ¶ 38. Costco continued TTD for Ruch and permitted her to work only on registers 4 and 5 until Costco could clarify Ruch's permanent restrictions. Mot. at 6:7–10; Pl.'s SSF ¶ 39.

From August 1, 2023, through August 7, 2023, Ruch was on leave for a workplace injury. Mot. at 6:16–17; Pl.'s SSF ¶ 41. When Ruch returned to work, she was still limited to working only on registers 4 and 5. Mot. at 6:17–18; Pl.'s SSF ¶ 42. Costco continued TTD for Ruch and permitted her to work on registers 4 and 5. Mot. at 6:18–22; Pl.'s SSF ¶ 42. Costco states that in mid-August 2023, it determined that the temporary accommodation of permitting Ruch to work only on registers 4 and 5 "proved unworkable based on Front End operations and the need to have Front End Cashiers be able to work on different cash registers throughout the day." Mot. at 6:18–25 (citing Gurney Decl. ¶ 35). Costco then offered Ruch a temporary reassignment to Front End Cashier Assistant which Ruch refused. Mot. at 6:22–26; Pl.'s SSF ¶ 43. Ruch states that the offered alternative positions were not comparable to her Front End Cashier position because they were part-time jobs or could not accommodate her required personal fan. Pl.'s SSF ¶ 43 (citing Ruch Dep. Tr. at 147–48, 173–74).

The parties dispute whether working on registers beyond 4 and 5, including at self-checkout, are essential functions of Ruch's Front End Cashier position. Costco installed self-checkout registers in the Redwood City warehouse in February 2020. Gurney Decl. ¶ 4. Costco states that essential functions of Ruch's position include being "assigned to any register, including self-checkout, at any time." Mot. at 6:10–15; *see* Gurney Decl. ¶ 33 ("Front End Cashiers are expected to be flexible, particularly with regard to working on different cash registers throughout

4

the day due to operational needs.  Front End Cashiers are moved around for rest and meal breaks, they must be flexible to work on different registers and monitor self-checkout, and relieve their colleagues when schedule or shift changes are required.").  Costco's "Job Analysis" for Front End Cashier lists nine "essential functions and tasks."  Mot. at 10:6–15; Opp. at 2:17–24.  One of the "essential functions" states:  "May assist members with Self Checkouts with regards to scanning heavy merchandise, entering in items numbers.  Up to 37.5%/day."  Gurney Decl., Ex. K (Job Analysis) (ECF No. 34-18).  Another states:  "May assist members with Self Checkouts through monitoring the registers (2) for errors and keeping belt area clean of product and debris.  Up to 18.75%/day."  *Id.*  At her deposition, Ruch acknowledged that the Job Analysis lists nine "essential job functions" for a Front End Cashier that represent the functions for the job but states that she does not have to do self-check because cashiers "don't rotate."  Ruch Dep. Tr. at 57–60; *see* Opp. at 2:25–28.  Ruch testified that Costco has "certain people that use self-check.  They don't rotate self-check; it's always the same people."  Opp. at 3:1–14 (citing Ruch Dep. Tr. at 42). Ruch states that Costco does not use her in self-check, and that she was assigned to self-checkout "maybe twice" prior to requesting accommodations.  *Id.* (citing Ruch Dep. Tr. at 42, 164).  Ruch further states that other cashiers are assigned to certain registers and do not have to work on multiple registers.  *Id.* (citing Ruch Dep. Tr. at 132).

On August 17, 2023, Briotix spoke with Dr. Wen regarding Ruch's permanent workplace restrictions; Dr. Wen told Briotix that there were "no accommodations" that Costco could provide to allow Ruch to work on "higher registers."  Mot. at 7:3–9; Pl.'s SSF ¶ 45.

On August 22, 2023, Costco placed Ruch on a personal leave of absence from August 22, 2023, to September 4, 2023.  Mot. at 6:27–28; Pl.'s SSF ¶ 44; Opp. at 6:9–12.  Costco states that Ruch "accepted" a voluntary leave of absence.  Mot. at 6:27–28.  Ruch states that the leave was "not voluntary."  Opp. at 6:5–20.  Ruch testified that she did "not voluntarily" take leave, she did not write or check the boxes of the leave form, she did not want to request leave, she did not think she had a choice in signing the leave form, and that Costco asked her to take leave because it did not "want to accommodate [her] medical requirements."  *Id.* (citing Ruch Dep. Tr. at 94–97).

On September 12, 2023, Dr. Wen told Briotix that Ruch was limited to working on the

5

"lower registers" because working on the "higher registers" exacerbated her medical condition. Mot. at 7:10–15; Pl.'s SSF ¶ 47. Briotix wrote Dr. Wen a letter, dated September 14, 2023, that summarized their conversation in September 2023. *See* Declaration of Christina Reischl ("Reischl Decl.") ¶ 17 (ECF No. 34-3), Ex. O (Briotix Letter) (ECF No. 34-22). This letter states Ruch must "have permanent access to a fan and cool environment" by being "accommodated to work at the registers that are located under/near the large overhead fans as well as supplied with a personal fan that sits on her register," and that Ruch "is capable of maintaining the workflow demands and has no restrictions related to fulfilling work tasks." Reischl Decl., Ex. O. Certain registers at the Redwood City Costco warehouse have large overhead fans. *See* Gurney Decl., Ex. T at 7 (JAM Notes) (ECF No. 34-27) (discussing fans above registers 4 and 5 and registers 14 and 15).

On September 15, 2023, Ruch provided Costco with a "return to regular work" note that did not list written restrictions. Mot. at 7:16–26; Pl.'s SSF ¶ 49; *see* Declaration of Jacob Crowell ¶ 11 (ECF No. 34-2), Ex. Q (Medical Note) (ECF No. 34-24) ("[Ruch] may return to regular work on September 25, 2023."). While Costco believed the note cleared Ruch to work without any restrictions, Ruch believed her prior restrictions were still in place. Mot. at 7:16–26; Pl.'s SSF ¶ 49. Ruch returned to work at Costco on September 25, 2023, as a Full-Time Front End Cashier. Mot. at 7:16–26; Pl.'s SSF ¶ 50. When she returned, Ruch told Costco that she was still restricted to working only on registers 4 and 5. Mot. at 7:16–26; Pl.'s SSF ¶ 50. Costco then placed Ruch back on a leave of absence. Mot. at 8:1–6; Pl.'s SSF ¶ 52.

Costco held two JAMs with Ruch in October 2023—at the meeting on October 30, 2023, Ruch and Costco discussed Ruch's accommodations of a personal fan, access to a cool environment, and working only on registers 4 and 5. Mot. at 8:7–17; Pl.'s SSF ¶¶ 53–60. Costco informed Ruch that it could accommodate her personal fan and temperature restrictions. Mot. at 8:16–17; Pl.'s SSF ¶ 47. Costco asserts that at this meeting, Ruch confirmed that she could not work beyond registers 4 and 5 "without working beyond her medical restrictions or eliminating one or more essential job functions." Mot. at 8:18–25 (citing Gurney Decl. ¶ 45, Ex. T); *see also* Gurney Decl., Ex. T at 8 (confirming that Ruch was limited to working registers 4 and 5 because "those registers are under a fan and it also allows her to put her personal fan on it"). Costco states

that it informed Ruch it could not offer her the Front End Cashier position because she could not perform the essential functions of the position.  Mot. at 8:26–28 (citing Gurney Decl. ¶ 45, Ex. T).  Ruch states that she is capable of working beyond registers 4 and 5 without accommodations.  Opp. at 7:17–21; *see* Ruch Dep. Tr. at 61 ("There's nowhere to put a fan on self-check, but I can do it.").  Ruch testified that at the meeting, she was asked if she could do self-check; she responded "yes, but," and before she could finish, Costco said, "okay, you can't do all the accommodations, bye."  Opp. at 4:18–28 (citing Ruch Dep. Tr. at 100–01, 123).  Ruch wanted to explain that because there was no fan in self-check, assignment there would not comply with her accommodations.  *Id.* (citing Ruch Dep. Tr. at 101).  Ruch avers that Costco told her that she "could not perform the essential functions of the job" because she "could not perform 'self-checkout' services without a fan."  Declaration of Carol Ann Ruch ("Ruch Decl.") ¶ 6 (ECF No. 35-3); *see also* Gurney Decl., Ex. T at 8 (discussing that self-checkout does not have a large overhead fan, does not have a place for a clip-on fan, and the last register is "really hot").  At the end of the meeting, Costco placed Ruch on a personal leave of absence because Ruch declined to be evaluated for any alternative positions available.  Mot. at 9:2–7; Pl.'s SSF ¶¶ 64–65.  Ruch states that the offered alternative positions were not comparable to her Front End Cashier position and that her leave was not voluntary.  Opp. at 7:22–8:7 (citing Ruch Dep. Tr. at 94–97, 147–48, 172–74; Rachmann Decl., Ex. 3 (ECF No. 35-4)).

Costco asserts that it could not permit Ruch to work beyond registers 4 and 5 because that would require her to work outside her medical restrictions.  Mot. at 8:18–25 (citing Gurney Decl. ¶¶ 44–45).  Ruch avers that in 2023, she performed cart return from time to time, without her personal fan, and that Costco did not tell her that it posed a problem by falling outside her accommodations.  Opp. at 5:4–17 (citing Ruch Decl. ¶ 7).  The Job Analysis for Front End Cashier lists "retrieving carts" as an "essential function."  Gurney Decl., Ex. K.

Starting November 1, 2023, Costco began sending Ruch information about positions available for reassignment.  Mot. at 9:8–18; Pl.'s SSF ¶ 67.  Ruch remained on personal leave for the remainder of 2023.  Mot. at 9:19–23; Pl.'s SSF ¶ 71.

United States District Court
Northern District of California

### b. Activities During 2024

By September 2024, Costco had offered Ruch more than 25 positions for reassignment. Mot. at 9:8–18; Pl.'s SSF ¶ 68.  Ruch states that none of the positions were comparable to her Front End Cashier position because they were either part-time jobs, were located outside of California, or did not permit her to utilize her accommodations.  Opp. at 7:22–8:7 (citing Ruch Dep. Tr. at 147–48, 172–74; Rachmann Decl., Ex. 3).

On September 24, 2024, Ruch provided Costco a form with updated workplace restrictions from Dr. Wen.  Mot. at 9:19–27; Pl.'s SSF ¶ 70.  The form states that (1) Ruch cannot have "exposure to temperature over 72 degrees"; (2) Dr. Wen "recommend[s] personal fan while working"; and (3) "[Ruch] is able to perform her task without restriction except temperature demands[.]"  Gurney Decl. ¶ 50, Ex. U (Work Restriction Form) (ECF No. 34-28).  Costco states that the form removed the restriction to work only on registers 4 and 5.  Mot. at 9:21–23.  Ruch states that her restrictions did not change because she still needed a fan when working on the register to avoid overheating and needed a consistently cool environment.  Opp. at 8:8–9:9 (citing Ruch Decl. ¶¶ 9–10).  On September 25, 2024, Ruch returned to work, and Costco provided her with a personal fan.  Mot. at 9:19–27; Pl.'s SSF ¶ 71.

On October 1, 2024, Ruch reported a workplace injury and filed a workers' compensation claim.  Mot. at 10:1–11; Pl.'s SSF ¶ 73.  Following a brief leave of absence, Ruch provided Costco with restrictions related to her injured extremity.  Mot. at 10:4–5; Pl.'s SSF ¶ 73.  Ruch accepted Costco's offer of TTD from October 5, 2024, through December 24, 2024.  Mot. at 10:1–11; Pl.'s SSF ¶ 75.  At the end of TTD, Costco placed Ruch on a workers' compensation-related leave of absence "because she was unable to perform the essential functions of her Front End Cashier position."  Mot. at 10:7–9; Pl.'s SSF ¶¶ 76–77.  Ruch remains on this leave today.  Mot. at 10:7–11; Pl.'s SSF ¶ 76.

### B. Procedural Background

On July 2, 2024, Ruch filed her complaint in the San Mateo Superior Court, Case No. 24-CIV-04075, against Costco and Does 1–100.  Not. of Removal (ECF No. 1), Ex. A ("Compl.") (ECF No. 1 at 11).  Ruch alleged six causes of action under California law:  (1) Age

8

1   Discrimination under the Fair Employment and Housing Act ("FEHA") (Cal. Gov't Code §§

2   12940 *et seq.*); (2) Medical Condition Discrimination under FEHA; (3) Failure to Accommodate

3   under FEHA; (4) Failure to Engage in the Interactive Process under FEHA; (5) Retaliation for

4   Requesting Accommodation under FEHA; and (6) Retaliation for FEHA Complaint under FEHA.

5   Compl. ¶¶ 15–58.

6          On August 16, 2024, Costco filed an answer to the complaint in the San Mateo Superior

7   Court.  Not. of Removal, Ex. C (ECF No. 1 at 36).  Costco removed the matter to this Court on

8   August 19, 2024.  ECF No. 1.

9          On April 28, 2025, Ruch filed the operative First Amended Complaint, alleging the same

10  six causes of action under California law.  ECF No. 25 ("FAC") ¶¶ 41–84.  Ruch seeks, *inter alia*,

11  unpaid wages, compensatory damages, and punitive damages.  *Id.* at 13.  On May 30, 2025,

12  Costco filed an Answer to the FAC.  ECF No. 27.

13         On December 1, 2025, Costco filed the instant Motion for Summary Judgment.  ECF No.

14  34 ("Mot.").  On December 15, 2025, Ruch filed an Opposition.  ECF No. 35 ("Opp.").  On

15  December 22, 2025, Costco filed a Reply.  ECF No. 36 ("Reply").

16         In its Reply, Costco objects to evidence proffered by Ruch in her Opposition.  *See* Reply at

17  12–15.  On December 22, 2025, Ruch filed a Response to Costco's Evidentiary Objections.  ECF

18  No. 37.  On December 23, 2025, Costco filed a Motion to Strike Ruch's Response.  ECF No. 38.

19  On December 24, 2025, Ruch filed an Opposition to the Motion to Strike.  ECF No. 39.

20                          **III.   LEGAL STANDARD**

21         Summary judgment is proper where there is "no genuine dispute as to any material fact and

22  the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving

23  for summary judgment bears the initial burden of identifying those portions of the pleadings,

24  discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*

25  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome

26  of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a

27  reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477

28  U.S. 242, 248 (1986).

United States District Court
Northern District of California

9

1       If the moving party meets its initial burden, the opposing party must then set forth specific

facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S.

at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving

party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the

task of the Court "to scour the record in search of a genuine issue of triable fact."  *Keenan v.

Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to identify with

reasonable particularity the evidence that precludes summary judgment."  *Id.*; *see also Cafasso,

U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (noting the nonmoving

party "must set forth non-speculative evidence of specific facts, not sweeping conclusory

allegations") (cleaned up).  Thus, "[t]he district court need not examine the entire file for evidence

establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with

adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*,

237 F.3d 1026, 1031 (9th Cir. 2001); *see also Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*,

626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.")

(cleaned up).

       "While the evidence presented at the summary judgment stage does not yet need to be in a

form that would be admissible at trial, the proponent must set out facts that it will be able to prove

through admissible evidence."  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010)

(citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must

be made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated.")).  If the nonmoving party

fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not

significantly probative, summary judgment may be granted."  *Anderson,* 477 U.S. at 249–50

(cleaned up).

## IV.   DISCUSSION

       Costco moves for summary judgment on each of Ruch's substantive claims, as well as her

claim for punitive damages, asserting that her claims fail because there is no triable issue of

material fact as to any of Ruch's claims.  Mot. at 2:7–8.  Ruch contends that "a genuine dispute

1    exists as to whether Costco's 'essential function' is a pretext for attempting to excuse its violations

2    of FEHA."  Opp. at 11:5–7.

3         In sum, the Court concludes that there are genuine disputes of material fact regarding

4    Ruch's FEHA Medical Condition Discrimination, Failure to Accommodate, Failure to Engage in

5    Interactive Process, and Retaliation for Requesting Accommodation claims.  Therefore, summary

6    judgment for Costco on these claims is not warranted.  However, the Court concludes that Ruch

7    fails to adduce evidence of required elements for her FEHA Age Discrimination and Retaliation

8    for FEHA Complaint claims and claim for punitive damages.  Therefore, summary judgment for

9    Costco on these claims is warranted.

10   **A.    Motion To Strike**

11        In response to Costco's evidentiary objections put forth in its Reply, Ruch filed a Response

12   to Costco's Evidentiary Objections.  ECF No. 37 ("Response").  Costco requests that the Court

13   strike Ruch's Response because Ruch "did not obtain prior Court approval for her filing and

14   Costco did not submit any new evidence in its reply."  ECF No. 38.  Costco further argues that

15   Ruch's Response is improper because it "substantially exceeds five pages and contains further

16   argument on the motion."  *Id.*  Ruch counters that her Response is not a sur-reply on the merits but

17   is instead "a targeted response which solely addresses Costco's evidentiary objections lodged in its

18   Reply."  ECF No. 39.  Ruch asserts that her Response is proper under the Federal Rules of Civil

19   Procedure.  *Id.*

20        Under the Local Rules, a party must obtain the court's permission to file supplementary

21   material after a reply is filed, unless the additional material comprises an objection to new

22   evidence proffered in the reply or a newly published judicial opinion.  Civ. L.R. 7.3(d).

23        Here, Ruch requests that the Court treat her Response as a request for leave to file under

24   Local Rule 7.3 and consider the Response on its merits.  ECF No. 39 at 4.  The Court agrees that

25   this is appropriate under the circumstances.  On summary judgment, once a party challenges the

26   admissibility of evidence, "[t]he burden is on the proponent to show that the material is admissible

27   as presented or to explain the admissible form that is anticipated."  2010 Adv. Comm. Notes, Fed.

28   R. Civ. P. 56(c)(2).  Thus, Ruch is entitled to respond to Costco's objections.  *Cf. Competitive*

United States District Court
Northern District of California

*Techs., Inc. v. Fujitsu Ltd.*, 333 F. Supp. 2d 858, 863 (N.D. Cal. 2004).  Therefore, although Costco is correct that Ruch should have obtained leave of Court to file her Response, the Court declines to strike the portions that address Costco's evidentiary objections because had Ruch "sought leave to file the brief, leave would have been granted."  *Id.*

Accordingly, the Court **DENIES** Costco's Motion to Strike.

**B.    Evidentiary Matters**

In its Reply, Costco objects to evidence proffered by Ruch in her Opposition.  *See* Reply at 12–15.  Ruch's Response addresses these evidentiary objections.  *See generally* ECF No. 37.  The Court addresses only those objections that are necessary to ruling on Costco's Motion for Summary Judgment below.  The Court declines to rule on Costco's remaining objections.

**1.    Relevance Objections**

Costco objects to paragraph seven of Ruch's Declaration on the basis that it is not relevant. Reply at 13.

"[O]bjections for relevance are generally unnecessary on summary judgment because they are duplicative of the summary judgment standard itself."  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (quoting *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)).  "[I]f evidence submitted on summary judgment could create a genuine dispute of material fact, it is, by definition, of consequence in determining the action, and therefore relevant . . . .  Conversely, if the submitted evidence does not create a genuine dispute of material fact, there is no need for the court to separately determine whether it is relevant because, even assuming it is not, it will not affect the ultimate summary judgment ruling."  *Id.* (cleaned up).

Accordingly, the Court **OVERRULES** Costco's relevance objection to paragraph seven of Ruch's Declaration, as it is duplicative of the summary judgment standard.

**2.    Hearsay Objections**

Costco objects to Exhibit 2 to Rachmann's Declaration (Ruch's Declaration), Exhibit 3 to Rachmann's Declaration (Costco's Offered Positions), and paragraph seven of Ruch's Declaration on the basis that they are hearsay.  Reply at 12–13.

Hearsay is an out of court statement made by a declarant, offered to prove the truth of the

matter asserted.  Fed. R. Evid. 801.  Hearsay is not admissible at trial unless permitted by law or allowed under an exclusion or exception.  *Id.* at 802; *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002) ("In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807.").

However, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents." *Sandoval*, 985 F.3d at 666 (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)).  "If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.* "Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence . . . .  The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  2010 Adv. Comm. Note, Fed. R. Civ. P. 56.

Here, the Court finds that the statements in Exhibit 3 to Rachmann's Declaration are not excluded hearsay.  Under the Federal Rules of Evidence, a party-opponent's prior out of court statement is admissible as non-hearsay if "[t]he statement is offered against an opposing party" and "was made by the party in an individual or representative capacity" or "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(A), (D).  Because Exhibit 3 was created by Costco, and is being offered by Ruch, it constitutes non-hearsay under the party-opponent exemption even if it is offered for the truth of the matter asserted.  *See* Response at 4.

The Court finds that Ruch's averments in her Declaration should not be excluded as hearsay at this stage because they could be presented in an admissible form at trial.  First, a party may proffer a declaration on summary judgment so long as it is made on personal knowledge by a competent declarant.  Response at 3 (citing Fed. R. Civ. P. 56(c)(4)).  Ruch's Declaration meets this threshold for consideration on summary judgment.  *See* Ruch Decl. ¶ 1.  Second, some of

1    Costco's objections to paragraph seven concern statements made by Costco and recounted by

2    Ruch.  Reply at 13 (citing Ruch Decl. ¶ 7:21–27).  As discussed, these are non-hearsay statements

3    under the party-opponent exemption.  *See* Response at 7–8; Fed. R. Evid. 801(d)(2).  Other

4    objections concern the absence of statements made by Costco.  Reply at 13.  However, the absence

5    of a statement cannot be hearsay because it is not an oral, written, or nonverbal assertion.  Fed. R.

6    Evid. 801(a); *see* Response at 8–9.

7         Accordingly, the Court **OVERERULES** Costco's hearsay objections to Exhibits 2 and 3

8    to the Rachmann Declaration and paragraph seven of Ruch's Declaration.

9         **3.    Authentication And Best Evidence Objections**

10        Costco objects to Exhibit 3 to Rachmann's Declaration (Costco's Offered Positions) and

11   paragraph ten of Ruch's Declaration on the basis that they are not authenticated and/or do not

12   comply with the best evidence rule.  Reply at 12, 14.

13        "Authentication is a condition precedent to admissibility."  *Orr*, 285 F.3d at 773 (cleaned

14   up).  To authenticate an item of evidence, "the proponent must produce evidence sufficient to

15   support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901.

16        As with hearsay, the question at the summary judgment stage is whether evidence "can be

17   presented in a form that would be admissible at trial."  *Sandoval*, 985 F.3d at 666.  In a summary

18   judgment motion, documents may be authenticated through personal knowledge when they are

19   "attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant [is] a

20   person through whom the exhibits could be admitted into evidence."  *Orr*, 285 F.3d at 774

21   (cleaned up).  However, because unauthenticated evidence is not *per se* excluded at summary

22   judgment, the proponent may show that evidence can be authenticated in any manner permitted by

23   the rules of evidence.  *See Lawrence v. City & Cnty. of San Francisco*, 258 F. Supp. 3d 977, 986

24   (N.D. Cal. 2017) (overruling objections to police reports as improperly authenticated because

25   authors of the reports could testify at trial to their contents based on personal knowledge).

26        The "best evidence rule" states that "[a]n original writing, recording, or photograph is

27   required in order to prove its content unless these rules or a federal statute provides otherwise."

28   Fed. R. Evid. 1002; *see United States v. Diaz-Lopez*, 625 F.3d 1198, 1200 (9th Cir. 2010)

1    (explaining FRE 1002 "codifies a principle long referred to at common law as the 'best evidence

2    rule'").  "[T]he best evidence rule requires not, as its common name implies, the best evidence in

3    every case but rather the production of an original document instead of a copy."  *Diaz-Lopez*, 625

4    F.3d at 1201 (cleaned up).

5            Here, the Court finds that Exhibit 3 to the Rachmann Declaration is authenticated and

6    complies with the best evidence rule.  Costco produced Exhibit 3 during discovery.  Response at 4.

7    Because Costco produced the document to Ruch in discovery, Costco has authenticated it.  *See*

8    *Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1115 (N.D. Cal. 2014) (citing *Maljack*

9    *Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir.1996) (holding that

10   documents produced by a party in discovery were deemed authentic when offered by the party-

11   opponent)).  And Ruch is correct that Exhibit 3 does not run afoul of the best evidence rule

12   because "a duplicate is admissible absent a genuine authenticity dispute."  Response at 4.  "When

13   records or data are stored in a computer or similar device, any printout or other output readable by

14   sight, shown to reflect the data accurately, is an original."  *Diaz-Lopez*, 625 F.3d at 1202 (citing

15   Fed. R. Evid. 1001(3)) (cleaned up).

16           As for paragraph ten of Ruch's Declaration, the best evidence rule does not apply.  The

17   Court agrees with Ruch that she does not attempt to prove a writing's content but instead avers to

18   her understanding of whether her restrictions meaningfully changed following Dr. Wen's Work

19   Restriction Form in September 2024.  *See* Response at 11; Reply at 14 (citing Gurney Decl., Ex.

20   U).

21           Accordingly, the Court **OVERRULES** Costco's authentication and best evidence

22   objections to Exhibit 3 to the Rachmann Declaration and paragraph ten of Ruch's Declaration.

23   **4.      Foundation Objections**

24           Costco objects to paragraphs seven and ten of Ruch's Declaration on the basis that they

25   lack foundation.  Reply at 13–14.

26           "A witness may testify to a matter only if evidence is introduced sufficient to support a

27   finding that the witness has personal knowledge of the matter.  Evidence to prove personal

28   knowledge may consist of the witness's own testimony."  Fed. R. Evid. 602.  "[A]n objection to

1    admission of evidence on foundational grounds must give the basis for objection in a timely way

2    to permit the possibility of cure." *Sandoval*, 985 F.3d at 666 (cleaned up).  As with other

3    objections, if a party can cure a defect in foundation, the evidence is properly considered on

4    summary judgment.  *Id.* at 667.

5         Here, the Court finds that Ruch establishes a proper foundation for her averments

6    regarding her participation in cart return and interactions with Costco regarding cart return and her

7    requested accommodations.  Ruch Decl. ¶¶ 7, 10.  Ruch has personal knowledge of these events

8    because she "personally performed cart return and observed she had no fan," she personally

9    experienced "an interaction, or lack of interaction" with Costco regarding cart return, and she "has

10   personal knowledge of what accommodations she requested and what she needed to do to manage

11   symptoms while working."  Response at 7–11; *see* Fed. R. Evid. 602.

12        Accordingly, the Court **OVERRULES** Costco's foundation objections to paragraphs

13   seven and ten of Ruch's Declaration.

14   **5.    Opinion Evidence Objections**

15        Costco objects to paragraphs seven and ten of Ruch's Declaration on the basis that they

16   constitute improper opinion evidence under Rules 701 and 702.  Reply at 13–14.

17        Under the Federal Rules of Evidence, opinion testimony by lay witnesses is limited to one

18   that is:

19            (a) rationally based on the witness's perception; (b) helpful to clearly
20            understanding the witness's testimony or to determining a fact in
             issue; and (c) not based on scientific, technical, or other specialized
21            knowledge within the scope of Rule 702.

22   Fed. R. Evid. 701.  A qualified expert may testify "in the form of an opinion or otherwise" where:

23            (a) the expert's scientific, technical, or other specialized knowledge
             will help the trier of fact to understand the evidence or to determine a
24            fact in issue; (b) the testimony is based on sufficient facts or data; (c)
             the testimony is the product of reliable principles and methods; and
25            (d) the expert has reliably applied the principles and methods to the
             facts of the case.
26

27   *Id.* at 702.

28        Here, the Court finds that paragraph 7 of the Ruch Declaration does not violate Rule 701.

United States District Court
Northern District of California

Costco takes issue with the following sentence in the paragraph:

> Despite the fact that I had no fan during cart return, Costco never told me that performing cart return without a fan meant that I could not be accommodated, and working cart return without a fan was never treated as a problem by management.

Reply at 13 (citing Ruch Decl. ¶ 7:24–27). This sentence does not involve opinion testimony—it describes observed events and an absence of events. *See* Response at 9. Therefore, Rule 701 is not implicated.

The Court finds that paragraph ten of the Ruch Declaration does not violate Rule 701. Costco objects to the following part of the paragraph:

> When I came back to work in 2024, my requested accommodations were the same in substance as they had been in 2023: I needed to have a fan on me at all times when I was working at the register, and I needed to avoid getting overheated. . . . In other words, my medical restrictions remained the same.

Reply at 14 (citing Ruch Decl. ¶ 10:11–12, 10:15). Ruch argues that this paragraph is "rationally based on her perception and experience." Response at 11 (citing Fed. R. Evid. 701). The Court agrees. *See Asberry v. Relevante*, No. 16-cv-01741-JLT-HBK(PC), 2023 WL 2563243, at *5 (E.D. Cal. Mar. 17, 2023) (internal citations omitted) (explaining that under Rule 701, a plaintiff "may testify as to what he saw or felt relating to his medical needs or condition[.] . . . He may also testify . . . as to *his understanding* of any medical diagnosis he received from a medical professional.") (emphasis in original).

Accordingly, the Court **OVERRULES** Costco's opinion evidence objections to paragraphs seven and ten of Ruch's Declaration.

## C.    Age Discrimination Claim (Claim 1)

Ruch alleges that Costco discriminated against her based on her age. FAC ¶¶ 41–45. Costco argues that summary judgment in its favor is appropriate on Ruch's Age Discrimination claim under FEHA because (1) Ruch's "claim is time-barred"; and (2) "there is no evidence that Costco failed to promote [Ruch] based on her age." Mot. at 10:13–12:22. In her Opposition, Ruch does not respond to Costco's arguments regarding her Age Discrimination claim. *See generally* Opp.

United States District Court
Northern District of California

Under FEHA, it is unlawful for an employer to discriminate against an employee based on the employee's age, which is a protected characteristic. Cal. Gov't Code § 12940(a). To prevail on a disparate treatment claim of age discrimination under FEHA, a plaintiff must prove that they "suffered an adverse employment action because of age" and that "intentional discrimination was a substantial motivating reason for the adverse action." *Carroll v. City & Cnty. of San Francisco*, 115 Cal. App. 5th 1192, 338 Cal. Rptr. 3d 841, 850 (2025) (cleaned up).

Here, Costco argues that the Court should adjudicate the Age Discrimination claim in its favor because Ruch fails to present any argument regarding the claim in her Opposition. Reply at 1:8–10. The Court agrees. Because Ruch does not respond to Costco's arguments regarding her Age Discrimination claim, the Court finds that this claim is abandoned. *See Long v. Pend Oreille Cnty. Sheriff's Dep't*, 269 F. App'x 749, 751 (9th Cir. 2008) ("Appellants abandoned their false arrest claim by failing to raise it in their opposition to summary judgment."); *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 919 (N.D. Cal. 2016) ("When a non-moving party opposes summary judgment with respect to some claims, but not others, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.") (cleaned up).

Accordingly, the Court **GRANTS** Costco's Motion for Summary Judgment on Ruch's Age Discrimination claim.

## D.    Medical Condition Discrimination Claim (Claim 2)

Ruch alleges that Costco discriminated against her based on her medical condition of Graves' Disease. FAC ¶¶ 7–9, 46–53. Costco argues that summary judgment in its favor is appropriate on Ruch's Medical Condition Discrimination claim under FEHA because Ruch cannot establish the *prima facie* elements of her disability discrimination claim. Mot. at 15:18–19.

Under FEHA, an employee's physical disability, mental disability, and medical condition are all protected characteristics. Cal. Gov't Code § 12940(a). It is unlawful for an employer, because of an employee's protected characteristic, "to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." *Id.* "FEHA's discrimination

1  provision addresses only *explicit* changes in the 'terms, conditions, or privileges of employment';

2  that is, changes involving some *official action taken by the employer*."  *Roby v. McKesson Corp.*,

3  47 Cal. 4th 686, 706 (2009) (internal citation omitted) (emphasis in original).

4      California has adopted the three-stage *McDonnell Douglas* burden-shifting test for

5  trying claims of discrimination based on a theory of disparate treatment.  *Guz v. Bechtel Nat. Inc.*,

6  24 Cal. 4th 317, 354 (2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  To

7  establish a *prima facie* case, the plaintiff generally "must provide evidence that (1) he was a

8  member of a protected class, (2) he was qualified for the position he sought or was performing

9  competently in the position he held, (3) he suffered an adverse employment action, such as

10  termination, demotion, or denial of an available job, and (4) some other circumstance suggests

11  discriminatory motive."  *Id.* at 355.  The burden then "shifts to the employer to rebut the

12  presumption by producing admissible evidence, sufficient to raise a genuine issue of fact and to

13  justify a judgment for the employer, that its action was taken for a legitimate, nondiscriminatory

14  reason."  *Id.* at 355–56 (cleaned up).  If the employer sustains this burden, the "plaintiff must then

15  have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or

16  to offer any other evidence of discriminatory motive."  *Id.* at 356.

### 1.    *Prima Facie* Case Of Discrimination

18      Costco argues that Ruch cannot establish a *prima facie* case of discrimination because (1)

19  Ruch "could not perform the essential functions of her front end cashier position"; and (2) "there

20  is no evidence Costco subjected [Ruch] to an adverse employment action because of her medical

21  condition."  Mot. at 12:23–15:19.

22      To establish a *prima facie* case of disability discrimination under FEHA, a plaintiff must

23  present evidence that "demonstrates, even circumstantially or by inference, that he or she (1)

24  suffered from a disability, or was regarded as suffering from a disability; (2) could perform the

25  essential duties of the job with or without reasonable accommodations, and (3) was subjected to an

26  adverse employment action because of the disability or perceived disability."  *Sandell v. Taylor-*

27  *Listug, Inc.*, 188 Cal. App. 4th 297, 310 (2010).  "The *prima facie* burden is light; the evidence

28  necessary to sustain the burden is minimal."  *Id.*

United States District Court
Northern District of California

1    Here, Costco does not dispute that Ruch has a disability protected under FEHA.  *See* Opp.

2    at 21:21–22 ("[T]here is no dispute that [Ruch] had a qualifying medical condition.").  Costco

3    argues that Ruch cannot meet the other two elements of her *prima facie* discrimination claim.

4    Mot. at 12:23–15:19.  The Court addresses each element below.

5              a.    **Essential Functions Of Job**

6    As an initial matter, the parties dispute what duties constitute essential functions of Ruch's

7    Front End Cashier position at Costco.  Costco asserts that the essential functions of Ruch's

8    position include "working self-checkout" and working "on registers beyond 4 and 5."  *Id.* at 14:2–

9    19.  Ruch contends that these duties are not essential functions of her position and that her

10   proffered evidence creates a dispute of fact on this issue.  Opp. at 11:8–13:17, 21:23–22:8.

11   On a FEHA discrimination claim, the employee plaintiff bears the burden of showing that

12   they "can perform the essential functions of the job with or without reasonable accommodation."

13   *Green v. State of California*, 42 Cal. 4th 254, 260 (2007).  FEHA defines "essential functions" as

14   the "fundamental job duties of the employment position the individual with a disability holds or

15   desires."  Cal. Gov't Code § 12926(f).  "'Essential functions' does not include the marginal

16   functions of the position."  *Id.*  "'Marginal functions' of an employment position are those that, if

17   not performed, would not eliminate the need for the job or that could be readily performed by

18   another employee or that could be performed in an alternative way."  2 Cal. Code Regs. §

19   11065(e)(3).

20   A job function may be considered essential if, *inter alia*, (1) "the reason the position exists

21   is to perform that function"; (2) there are a "limited number of employees available among whom

22   the performance of that job function can be distributed"; or (3) "the incumbent in the position is

23   hired for his or her expertise or ability to perform the particular highly specialized function."

24   *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 373 (2015) (citing Cal. Gov't Code §

25   12926(f)(1); 2 Cal. Code Regs. § 11065(e)(1)) (cleaned up).

26   "Evidence of 'essential functions' may include the employer's judgment, written job

27   descriptions, the amount of time spent on the job performing the function, the consequences of not

28   requiring employees to perform the function, the terms of a collective bargaining agreement, the

United States District Court
Northern District of California

1    work experiences of past incumbents in the job, and the current work experience of incumbents in

2    similar jobs." *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 717–18 (2017) (citing Cal. Gov't

3    Code § 12926(f)(2)). No one factor is dispositive. *Lui v. City & Cnty. of San Francisco*, 211 Cal.

4    App. 4th 962, 977 (2012). "The identification of essential job functions is a highly fact-specific

5    inquiry." *Id.* at 971 (cleaned up). Whether a duty of a position is an essential function is a

6    question of fact. *Nealy*, 234 Cal. App. 4th at 373.

7        Here, construing all evidence in the light most favorable to Ruch, the Court finds that a

8    reasonable jury could find that working on all registers is not an essential function of Ruch's Front

9    End Cashier position and thus Ruch was able to perform the essential functions of her position.[2]

10   The only duty that Costco asserts Ruch could not perform is working "on registers beyond 4 and

11   5," including "working self-checkout." Mot. at 14:2–19. It is undisputed that Costco's Job

12   Analysis lists two "essential functions and tasks" that involve assisting members at self-checkout.

13   Gurney Decl., Ex. K. While this is relevant to the inquiry "an employer may not turn every

14   condition of employment which it elects to adopt into an essential job function, merely by

15   including it in a job description." *Lui*, 211 Cal. App. 4th at 978. Costco's assertion that Ruch

16   "concedes that Costco's Front End Cashier Job Analysis contains the essential functions of her

17   position" does not move the needle. Reply at 8:26–27. Although Ruch acknowledged that the Job

18   Analysis lists duties of her position, she did not make a legal determination as to whether those

19   duties were essential functions. Opp. at 22:1–8; Ruch Dep. Tr. at 57–60.

20       Ruch's proffered evidence on the amount of time spent performing self-check duties and

21

22   ───────────────

     [2] As a threshold issue, it is unclear under California law which party bears the burden of proving

23   whether a duty is an essential function of a position. *See Lui*, 211 Cal. App. 4th at 972 (noting it is
     not clear whether plaintiff's "burden included the burden of proving what the essential functions

24   of the position are, rather than just plaintiff's ability to perform the essential functions").
     However, the Court need not resolve that issue because on summary judgment, Costco bears the

25   burden of negating Ruch's *prima facie* case irrespective of who bears the burden at trial. *See
     Sandell*, 188 Cal. App. 4th at 309 ("Although the burden of proof in a discrimination action

26   claiming an unjustifiable termination ultimately rests with the plaintiff . . . in the case of a motion
     for summary judgment or summary issue adjudication, *the burden rests with the moving party to*

27   *negate the plaintiff's right to prevail on a particular issue* . . . In other words, the burden is
     reversed in the case of a summary issue adjudication or summary judgment motion.") (emphasis in

28   original) (cleaned up).

the work experience of incumbents supports her argument that working on all registers is not an essential function. Opp. at 12:1–13:17. Contrary to Costco's Job Analysis stating that self-check duties comprise 37.5% and 18.74% of an employee's day, Ruch testified that she was assigned to self-check twice prior to requesting accommodations. Gurney Decl., Ex. K; Ruch Dep. Tr. at 42, 164. Costco counters that self-check was only implemented in 2020. Reply at 6:7–9. Even so, this means that Ruch was assigned to self-check two times in three years, between 2020 and 2023, when she requested accommodations. Mot. at 4:21–22; Pl.'s SSF ¶ 21. It is true that a function need not encompass the majority of an employee's time to be essential. Reply at 6:11–13 (citing *Lui*, 211 Cal. App. 4th at 978). However, Ruch further testified that only certain people were assigned to self-check and that some people were regularly assigned to certain registers without having to rotate around. Ruch Dep. Tr. at 42, 57–60, 132. This provides evidence that incumbents were not required to work on all registers or on self-check. Overall, because a jury could conclude that working beyond registers 4 and 5 is not an essential function of Ruch's position, the Court cannot decide the issue on summary judgment. *See Hastings v. Dep't of Corr.*, 110 Cal. App. 4th 963, 967 n.6 (2003) (explaining that only in the absence of other evidence, may a court "properly rely on the employer's judgment and the written job description to determine the essential job functions" on summary judgment). Therefore, because a dispute of fact exists regarding what duties are essential functions, there is a factual dispute regarding whether Ruch could perform the essential functions of her position. As such, summary judgment for Costco is not warranted.

### b.    Adverse Employment Action Because Of Disability

Costco argues that "there is no evidence that Costco imposed any adverse action on [Ruch] because of her disability." Mot. at 14:10–15:19. Ruch contends that a jury could find that Costco took adverse actions against her "by forcing her onto involuntary 'personal medical leave,' refusing to reinstate her with accommodations, and offering only inferior, part-time roles and that it took those actions because of her medical condition and the accommodations it did not want to continue providing[.]" Opp. at 23:16–25:25.

The FEHA discrimination provisions protect employees against adverse action in the form

1    of "compensation or in the terms, conditions, and privileges of employment." *Yanowitz v. L'Oreal*

2    *USA, Inc.*, 36 Cal. 4th 1028, 1053 (2005).  Under the California Supreme Court's "materiality"

3    test, adverse actions include "so-called 'ultimate employment actions' such as termination or

4    demotion, but also the entire spectrum of employment actions that are reasonably likely to

5    adversely and materially affect an employee's job performance or opportunity for advancement in

6    his or her career." *Id.* at 1053–54.  "[I]n determining whether an employee has been subjected to

7    treatment that materially affects the terms and conditions of employment, it is appropriate to

8    consider the totality of the circumstances[.]" *Id.* at 1036.

9        To establish a causal link between an adverse action and a protected characteristic in mixed

10   motive cases, a plaintiff must "show that discrimination was a *substantial* motivating factor, rather

11   than simply *a* motivating factor" for the employer's action.  *Harris v. City of Santa Monica*, 56

12   Cal. 4th 203, 232 (2013) (emphasis in original).

13       Here, construing all evidence in the light most favorable to Ruch, the Court finds that a

14   reasonable jury could find that Ruch suffered an adverse employment action because of her

15   disability.  The reduction of an employee's hours alone can constitute a material and adverse

16   employment action by an employer.  *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75,

17   93 (2017).  And the act of placing an employee on involuntary administrative leave can constitute

18   an adverse employment action.  *Whitehall v. Cnty. of San Bernardino*, 17 Cal. App. 5th 352, 367

19   (2017).  There is no dispute that Costco placed Ruch on personal leave in August 2023, in

20   September 2023, and in October 2024.  Mot. at 6:16–28, 8:1–6, 10:1–7; Pl.'s SSF ¶¶ 44, 52, 73.

21   Regarding the 2023 leave, Ruch states that she did not request the leave, did not draft the leave

22   form, signed the leave form after being pressured by Costco to do so, and did not take leave

23   voluntarily.  Opp. at 23:16–25; Ruch Dep. Tr. at 94–97.  In sum, the Court agrees with Ruch that

24   the "personal medical leave she did not want, did not request, and could not afford" could qualify

25   as an adverse employment action.  Opp. at 23:16–19.

26       Regarding causation, Costco argues that it placed Ruch on leave not because of her

27   disability but because she could not perform the essential functions of her position, namely that

28   she could not work beyond registers 4 and 5.  Mot. at 14:10–15:19.  According to Costco, it

United States District Court
Northern District of California

offered Ruch leaves of absence as a reasonable accommodation; these cannot constitute "an adverse action as a matter of law" because Ruch rejected all alternative positions offered by Costco. *Id.*; Reply at 11:7–20. But that puts the cart before the horse. Reassignment is only a reasonable accommodation where the employee cannot be accommodated in their current position. *Atkins*, 8 Cal. App. 5th at 721. And a leave of absence is only a reasonable accommodation where reassignment is not feasible. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263–64 (2000). In other words, the sequence of events—an employee is offered reassignment because they cannot perform essential functions and is then offered a leave of absence because they cannot work in a reassigned position—depends on the employee's inability to perform essential functions. It is undisputed that Ruch can be accommodated in her position by permitting her to work only on registers 4 and 5. Mot. at 8:7–17; Pl.'s SSF ¶¶ 53–60. Costco's argument thus rises and falls with its argument that Ruch could not perform the essential functions of her position. If working on all registers is not an essential job function, then reassignment and leave were unnecessary, and a reasonable jury could find that Costco placed Ruch on leave because of her disability. Therefore, the Court finds that Ruch establishes a *prima facie* case of discrimination under FEHA.

### 2.    Pretext

Costco asserts that it placed Ruch on leave for a legitimate nondiscriminatory reason—because she could not perform the essential functions of her position, with or without reasonable accommodations. Mot. at 14:21–28; Reply at 11:7–20. Ruch argues that Costco's purported neutral reason for placing Ruch on leave, that Ruch "could not perform 'essential functions,' especially self-checkout and rotation," is pretextual. Opp. at 24:14–25:25. Costco responds that Ruch "offers no evidence that any alleged adverse action by Costco was motivated by discriminatory animus." Reply at 10:19–11:22.

To show pretext, a plaintiff "must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." *Swanson v. Morongo Unified Sch. Dist.*, 232 Cal. App. 4th 954, 966 (2014). "A plaintiff's *prima facie* case,

1    combined with sufficient evidence to find that the employer's asserted justification is false, may

2    permit the trier of fact to conclude that the employer unlawfully discriminated."  *Diego v. City of*

3    *Los Angeles*, 15 Cal. App. 5th 338, 351 (2017) (cleaned up).

4           Here, construing all evidence in the light most favorable to Ruch, the Court finds that a

5    reasonable jury could find that Costco's actions were based on a discriminatory motive.  First, if a

6    jury finds that working all registers is not an essential function, then a jury could find that

7    Costco's asserted justification is false.  This alone could permit a jury to find for Ruch.  *Id.*

8    Second, Ruch proffers other evidence of pretext.  Costco asserts that when Ruch said she could

9    work at self-check without a fan, it could not allow her to do so because it was not "lawfully

10   allowed" to "permit [Ruch] to work beyond her undisputed medical restrictions."  Reply at 11:13–

11   17.  Ruch avers that in 2023, she performed cart return duties (listed as an essential function in the

12   Job Analysis) with no fan, but Costco did not indicate that it was a problem.[3]  Opp. at 3–15 (citing

13   Ruch Decl. ¶ 7).  This casts doubt on Costco's affirmative defense.  *See* Reply at 4:14–22 (citing

14   Cal. Gov't Code § 12940(a)(1) – (2)) ("[A]n employer may lawfully prevent an employee from

15   performing job duties, including essential functions, that would endanger the employee's health or

16   safety."); 2 Cal. Code Regs. § 11067 (stating defense of employee's health and safety requires

17   showing "job imposes an imminent and substantial degree of risk to the applicant or employee").

18   Moreover, Costco maintains that when Ruch returned to work in September 2024, she no longer

19   had the restriction of working only on registers 4 and 5.  Mot. at 9:19–23; Reply at 9:27–10:8.  But

20   Ruch avers that she still had the same restriction because working on certain registers is directly

21   tied to her temperature restriction; she supports this assertion with evidence that only some

22   registers have large overhead fans, self-check does not have a place for her personal fan, and

23   Costco understood the register restriction as related to the temperature restriction during the

24   October 2023 JAM meeting.  Opp. at 8:8–9:9; *see* Ruch Decl. ¶ 10; Gurney Decl. ¶ 45, Ex. T at 7–

25

26   ───────────────

27   [3] Costco argues that Ruch's Declaration is improperly before the Court because it contains new
     theories of liability "not pled in her Complaint."  Reply at 4:24–5:13.  Not so.  Ruch does not
     allege that Costco's action of permitting her to perform cart return without a fan forms a basis for
28   Costco's liability.  Instead, Ruch proffers the evidence as support for her argument that Costco's
     neutral reason was pretextual.  *See, e.g.,* Opp. at 23:3–15.

United States District Court
Northern District of California

8; Reischl Decl., Ex. O; Ruch Dep. Tr. at 61.  Overall, Ruch's evidence creates factual disputes regarding whether Costco permitted Ruch to perform essential functions without her accommodations and whether Costco treated Ruch's request for accommodations differently in 2023 and 2024.  *See* Opp. at 9:2–9, 23:3–15.  Because the Court cannot resolve these questions of fact, summary judgment in Costco's favor is not warranted.

Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Ruch's Medical Condition Discrimination claim.

**E.      Failure To Accommodate Claim (Claim 3)**

Ruch alleges that Costco failed to provide reasonable accommodations for her disability of Graves' Disease.  FAC ¶¶ 7–10, 17–20, 54–61.  Costco argues that summary judgment in its favor is appropriate on Ruch's Failure to Accommodate claim under FEHA because (1) Ruch "could not perform the essential functions of her front end cashier position"; and (2) Ruch "refused evaluation of alternative positions for possible reassignment."  Mot. at 15:20–18:6.  Ruch contends that she is qualified to perform all essential functions of her position and that "she was never truly offered an equivalent job to her Front End Cashier role."  Opp. at 16:24–19:13.

Under FEHA, it is unlawful

> [f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.

Cal. Gov't Code § 12940(m)(1).  "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position held or desired, and (3) the employer failed to reasonably accommodate the plaintiff's disability."  *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 346 (2022) (cleaned up).

"A reasonable accommodation is any modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired."  *Id.* at 345 (cleaned up).  Whether an accommodation is reasonable is generally a question for the jury.  *Id.* at 346.

Here, construing all evidence in the light most favorable to Ruch, the Court finds that a

United States District Court
Northern District of California

1  reasonable jury could find that Ruch could perform the essential functions of her position.  To be

2  sure, "elimination of an essential function is not a reasonable accommodation."  *Nealy*, 234 Cal.

3  App. 4th at 375.  However, as discussed, there is a factual dispute regarding whether working on

4  all registers—the purported eliminated essential function—is an essential function.  If it was not,

5  then Costco cannot lean on its argument that it had to eliminate essential functions to provide

6  Ruch with accommodations in her Front End Cashier position.  Mot. at 17:2–15.

7      The Court also finds that a reasonable jury could find that Costco failed to provide

8  reasonable accommodations to Ruch.  Costco argues that it offered Ruch reassignment as a

9  reasonable accommodation.  Mot. at 17:16–18:6.  There is no dispute that Ruch could work on

10  registers 4 and 5 with her temperature accommodations.  *Id.* at 8:7–17; Pl.'s SSF ¶¶ 53–60.  Thus,

11  Costco's argument again depends on whether working on all registers is an essential function—

12  there was no need to reassign Ruch if she could perform the essential functions with

13  accommodations.  *Atkins*, 8 Cal. App. 5th at 721.  Therefore, a jury could find that Costco failed to

14  provide Ruch the reasonable accommodation of working only on registers 4 and 5.

15      Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Ruch's

16  Failure to Accommodate claim.

17  **F.    Failure To Engage In Interactive Process Claim (Claim 4)**

18      Ruch alleges that Costco "failed and refused to engage in the interactive process" after

19  Ruch requested accommodations for her disability of Graves' Disease.  FAC ¶¶ 7–9, 21–25, 62–

20  71.  Costco argues that summary judgment in its favor is appropriate on Ruch's Failure to Engage

21  in Interactive Process claim under FEHA because (1) "Costco timely engaged with [Ruch] to

22  evaluate her request for reasonable accommodation" and (2) "there is no reasonable

23  accommodation that Costco could have provided to [Ruch] that allowed her to perform the

24  essential functions of her position."  Mot. at 18:7–19:8.  Ruch contends that "Costco's 'interactive

25  process' was a one-way monologue, not the dialogue FEHA requires."  Opp. at 19:14–21:11.

26      Under FEHA, it is unlawful

27          [f]or an employer or other entity covered by this part to fail to engage
            in a timely, good faith, interactive process with the employee or
28          applicant to determine effective reasonable accommodations, if any,

27

1

> in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.

2

3   Cal. Gov't Code § 12940(n).  "Under FEHA, an employer must engage in a good faith interactive

4   process with the disabled employee to explore the alternatives to accommodate the disability."

5   *Wysinger v. Auto. Club of S. California*, 157 Cal. App. 4th 413, 424 (2007).  Once an employee

6   initiates the process, "the employer has *a continuous obligation* to engage in the interactive

7   process in good faith."  *Kaur*, 83 Cal. App. 5th at 347 (emphasis in original).  Whether an

8   employer is responsible for a breakdown in the interactive process is a question of fact.  *Nadaf-*

9   *Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 985 (2008).

10         Here, construing all evidence in the light most favorable to Ruch, the Court finds that a

11   reasonable jury could find that Costco did not carry out its obligation to engage in the interactive

12   process with Ruch.  It is undisputed that Costco determined that Ruch could not perform the

13   essential functions of her position because she was restricted to working on registers 4 and 5.

14   Opp. at 7:11–15; Reply at 7:14–26.  Ruch argues that after she told Costco she could work on self-

15   check without a fan, Costco did not permit Ruch a trial run on self-check, did not discuss how to

16   structure her day, and did not discuss how a fan could be implemented at self-check.  Opp. at

17   20:4–21:11.  Indeed, there is no evidence that Costco explored the option of having Ruch work on

18   self-check for limited durations during her day.  Nor did Costco revisit whether Ruch could be

19   accommodated in her Front End Cashier position during the year Ruch was on leave.  Under

20   California law, Costco has a continuous obligation to engage in the interactive process in good

21   faith.  *Kaur*, 83 Cal. App. 5th at 347; *see also Nadaf-Rahrov*, 166 Cal. App. 4th at 985

22   ("[T]he fact that an employer took some steps to work with an employee to identify reasonable

23   accommodations does not absolve the employer of liability under section 12940(n).").  So while

24   Costco's actions may satisfy this obligation, they may not—that is a question for the jury.

25         Costco asserts that to prevail on her claim, Ruch "must identify a reasonable

26   accommodation that would have been available at the time the interactive process occurred."  Mot.

27   at 18:17–27.  However, California appellate courts disagree over whether this is a required

28   element of an interactive process claim.  *Compare Wysinger*, 157 Cal. App. 4th at 424 (explaining

employer cannot escape liability on interactive process claim by claiming "there was no available reasonable accommodation") *with Shirvanyan v. Los Angeles Cmty. Coll. Dist.*, 59 Cal. App. 5th 82, 96 (2020) ("Availability of a reasonable accommodation is an element of an interactive process claim."). The Court need not resolve this split. Even assuming, *arguendo*, that Ruch must identify an available accommodation, she proffers evidence that permitting her to work only on registers 4 and 5 was a reasonable accommodation if working outside these registers is not an essential function. Therefore, summary judgment in Costco's favor is not warranted.

Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Ruch's Failure to Engage in Interactive Process claim.

## G.    Retaliation For Requesting Accommodation Claim (Claim 5)

Ruch alleges that Costco retaliated against her for requesting accommodations in connection with her medical condition of Graves' Disease. FAC ¶¶ 7–9, 11–13, 72–78. Costco argues that summary judgment in its favor is appropriate on Ruch's Retaliation for Requesting Accommodation claim under FEHA because Ruch cannot establish the *prima facie* elements of her retaliation claim. Mot. at 19:11–17.

Under FEHA, it is unlawful

> [f]or an employer or other entity covered by this part to, in addition to the employee protections provided pursuant to subdivision (h), retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted.

Cal. Gov't Code § 12940(m)(2).

California has adopted the three-stage *McDonnell Douglas* burden-shifting test for FEHA retaliation claims. *Yanowitz*, 36 Cal. 4th at 1042 (citing *McDonnell*, 411 U.S. at 802–805). "[T]o establish a *prima facie* case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Id.* (cleaned up). "Once an employee establishes a *prima facie* case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. If the employer produces a legitimate reason for the adverse employment action, the presumption of

retaliation drops out of the picture, and the burden shifts back to the employee to prove intentional retaliation." *Id.* (cleaned up). "Actions for retaliation are inherently fact-driven; it is the jury, not the court, that is charged with determining the facts." *McCoy v. Pac. Mar. Ass'n*, 216 Cal. App. 4th 283, 299 (2013) (cleaned up).

Here, the parties agree that Ruch engaged in the protected activity of requesting reasonable accommodations. Mot. at 19:14–17; Opp. at 2:2–16. The question is whether Ruch suffered retaliation because of her protected activity.

### 1. *Prima Facie* Case Of Retaliation

Costco argues that Ruch cannot establish a *prima facie* case of retaliation because "there is no evidence Costco imposed an adverse employment action on [Ruch] for engaging in a protected activity." Mot. at 19:9–22:8. Ruch counters that Costco placed her on involuntary leave after she requested accommodations consistent with her medical restrictions. Opp. at 6:5–7:10; *see id.* at 17:19–22 ("Costco's only real complaint is that [Ruch] dared ask to spend the bulk of her day at the cooler registers where she has always worked.").

As with the discrimination provisions, the FEHA retaliation provisions protect employees against adverse action in the form of "compensation or in the terms, conditions, and privileges of employment." *Yanowitz*, 36 Cal. 4th at 1053. To demonstrate a causal link between an adverse action and a protected activity, a plaintiff must show that the protected activity was a "substantial motivating factor" for the employer's action. *Alamo v. Prac. Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 483 (2013). "The retaliatory motive is proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 615 (1989).

Here, construing all evidence in the light most favorable to Ruch, the Court finds that a reasonable jury could find a causal link between Ruch's protected activity and Costco's adverse action. It is undisputed that Ruch engaged in the protected activity of requesting disability accommodations and that Costco was aware of these requests. Mot. at 19:14–17; Opp. at 2:2–16. As discussed, Costco's imposed leaves of absence on Ruch could qualify as adverse employment

1    actions.  It is undisputed that Ruch requested accommodations in July 2023, and that Costco ended

2    her TTD early and placed her on leave in August 2023 and again between September 2023 and

3    September 2024.  Mot. at 5:13–25, 6:22–28, 8:1–6; Pl.'s SSF ¶¶ 31–32, 34, 43–44, 52.  And as

4    discussed, there is a factual dispute concerning whether Ruch's leave was prompted by her

5    inability to perform essential functions.  Based on this evidence, a jury could find that Ruch

6    engaged in protected activities, that Costco was aware of the protected activities, and that the

7    adverse actions followed within a relatively short time thereafter; this is sufficient to establish

8    causation.  *Fisher*, 214 Cal. App. 3d at 615.  Therefore, the Court finds that Ruch establishes a

9    *prima facie* case of retaliation under FEHA.

10           **2.      Pretext**

11           Ruch argues that Costco's assertion that it placed her on leave because she could not

12   perform essential functions is pretextual.  Opp. at 24:14–25:25.  Costco does not address pretext

13   for the retaliation claim in its Reply but argues that there is no evidence of discriminatory motive

14   for the discrimination claim.  *See* Reply at 10:19–12:6.

15           To show pretext, "the employee must demonstrate such weaknesses, implausibilities,

16   inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

17   its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence

18   infer that the employer did not act for the asserted non-discriminatory reasons."  *Jumaane v. City

19   of Los Angeles*, 241 Cal. App. 4th 1390, 1409 (2015) (emphasis in original) (cleaned up).

20           Here, construing all evidence in the light most favorable to Ruch, the Court finds that a

21   reasonable jury could find that Costco's actions were based on a discriminatory motive.  As

22   discussed, based on the inconsistencies and contradictions in Costco's assertion that it placed

23   Ruch on leave for an inability to perform essential functions, a jury could find that Costco's

24   asserted justification for placing Ruch on leave is false.  *See supra*, Part IV.D.2; *Jumaane*, 241

25   Cal. App. 4th at 1409.  Therefore, summary judgment in Costco's favor is not warranted.

26           Accordingly, the Court **DENIES** Costco's Motion for Summary Judgment on Ruch's

27   Retaliation for Requesting Accommodation claim.

28

United States District Court
Northern District of California

**H.     Retaliation For FEHA Complaint Claim (Claim 6)**

Ruch alleges that Costco retaliated against her for discussing "the issue of denial and/or rescission of her accommodation with management in an attempt to resolve the situation." FAC ¶¶ 79–84. Costco argues that summary judgment in its favor is appropriate on Ruch's Retaliation for FEHA Complaint claim under FEHA because "there is no evidence Costco imposed an adverse employment action on [Ruch] for engaging in a protected activity." Mot. at 19:9–22:8. In her Opposition, Ruch does not respond to Costco's arguments regarding her Retaliation for FEHA Complaint claim. *See generally* Opp.

Under FEHA, it is unlawful

> [f]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

Cal. Gov't Code § 12940(h).

Here, Costco argues that the Court should adjudicate Ruch's Retaliation for FEHA Complaint claim in its favor because Ruch fails to present any argument regarding the claim in her Opposition. Reply at 1:8–10. The Court agrees. Because Ruch does not respond to Costco's arguments regarding her Retaliation for FEHA Complaint claim, the Court finds that this claim is abandoned. *See, e.g., Long*, 269 F. App'x at 751.

Accordingly, the Court **GRANTS** Costco's Motion for Summary Judgment on Ruch's Retaliation for FEHA Complaint claim.

**I.     Claim For Punitive Damages**

Ruch seeks "punitive damages in an amount to be proven at trial." FAC at 13. Costco argues that summary judgment in its favor is appropriate on Ruch's request for punitive damages because Ruch "cannot establish by clear and convincing evidence that Costco's managing agent engaged in, authorized, or ratified fraudulent, malicious, or oppressive conduct." Mot. at 22:9–23:26. In her Opposition, Ruch does not respond to Costco's arguments regarding her claim for punitive damages. *See generally* Opp.

Under California law, in a tort action,

1

2

3

> where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

4  Cal. Civil Code § 3294(a).  But,

5

6

7

8

9

10

> [a]n employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.  With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

11  *Id.* at § 3294(b).  "In order to demonstrate that an employee is a true managing agent under section

12  3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee

13  exercised substantial discretionary authority over significant aspects of a corporation's business."

14  *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 577 (1999).  The California Supreme Court explained:

15

16

17

18

19

20

> principal liability for punitive damages [does] not depend on employees' managerial level, but on the extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy.  Thus, supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents.  Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees.

21  *Id.*

22       Here, Costco argues that the Court should adjudicate Ruch's claim for punitive damages in

23  its favor because Ruch fails to present any argument regarding the claim in her Opposition.  Reply

24  at 1:8–10.  The Court agrees.  Because Ruch does not respond to Costco's arguments regarding

25  her claim for punitive damages, the Court finds that this claim is abandoned.  *See, e.g., Long*, 269

26  F. App'x at 751.

27       Accordingly, the Court **GRANTS** Costco's Motion for Summary Judgment on Ruch's

28  claim for punitive damages.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Costco's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: January 14, 2026

THOMAS S. HIXSON
United States Magistrate Judge